JUDGE TORRES

13 CIV 4496

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

CHARLES MATHIS,

                                       Plaintiff,      COMPLAINT

-against-

THE CITY OF NEW YORK; POLICE OFFICER J.
CONCEPCION, SHIELD NO. 948804; AND POLICE
OFFICERS JOHN/JANE DOE # 1 - 10,              JURY TRIAL DEMANDED

                                       Defendants.
------------------------------------------------------------------x

## NATURE OF THE ACTION

1.    This is an action to recover money damages arising out of the violation of Plaintiff's rights under the Constitution of the United States.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and 1367(a).

4.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## JURY DEMAND

5.    Plaintiff demands a trial by jury in this action.

## PARTIES

6.    Plaintiff Charles Mathis ("Plaintiff" or "Mr. Mathis"), an African-American male, is a resident of the County of Bronx, City of New York.

7. Defendant The City of New York is a municipal organization organized under the laws of the State of New York.

8. Defendant The City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant The City of New York.

9. The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

10. At all times relevant herein, Defendant Police Officer J. Concepcion ("Concepcion") was an officer, employee, and agent of Defendant The City of New York.

11. At all times relevant herein, Defendant Concepcion was acting within the scope of his/her employment with Defendant The City of New York.

12. At all times relevant herein, Defendant Concepcion was acting under color of state law.

13. Defendant Concepcion is sued in his/her individual and official capacities.

14. At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were supervisors, officers, employees, and/or agents of Defendant The City of New York.

15. At all times relevant herein, Defendants John/Jane Doe # 1 - 10 were acting within the scope of their employment with Defendant The City of New York.

16. At all times relevant herein, Defendants John/Jane Doe # 1 – 10 were acting under color of state law.

17. Defendants John/Jane Doe # 1 - 10 are sued in their individual and official capacities.

18. The names John/Jane Doe # 1 - 10 are fictitious, their true names being unknown to Plaintiff at this time.

### STATEMENT OF FACTS

19. On September 25, 2012, Mr. Mathis was lawfully present at the intersection of Jerome Avenue and East Mount Eden Avenue in the County of Bronx, State of New York ("Subject Location").

20. Mr. Mathis was lawfully crossing the intersection at the Subject Location while pushing his daughter in a stroller.

21. At the time, there was a large police presence in the area as the NYPD searched for an individual in an unrelated murder investigation.

22. As Mr. Mathis crossed the intersection, Defendant John/Jane Doe # 1, who was running with his baton in his hand, bumped into Mr. Mathis.

23. Mr. Mathis said to Defendant John/Jane Doe # 1, in essence, "You bumped me."

24. Defendant John/Jane Doe # 1 turned around and said "What did you say to me?"

25. Defendant John/Jane Doe # 1 struck Mr. Mathis across the right side of Mr. Mathis' face with his baton.

26. Mr. Mathis raised his arms to protect himself and said "You hit me in front of my fucking daughter!"

27. Defendant John/Jane Doe # 1 continued to strike Mr. Mathis with his baton.

28. Defendants tackled Mr. Mathis to the ground.

29. As Mr. Mathis lay on the ground, Defendants kicked, punched, and struck Mr. Mathis.

30. The Defendants dragged Mr. Mathis across the ground, injuring Mr. Mathis' elbows.

31. Defendants then twisted Mr. Mathis' arms behind his back and placed handcuffs on him, causing injury to Mr. Mathis' shoulders and wrists.

32. Mr. Mathis's arrest was without probable cause.

33. Mr. Mathis's arrest was approved at the Subject Location by Defendant John/Jane Doe # 10.

34. Mr. Mathis was transported to a police precinct.

35. At the precinct, Defendant Concepcion issued Mr. Mathis a Summons.

36. The individual defendants spoke with the Bronx County District Attorneys' Office, individually and collectively lying to the Bronx County District Attorney's Office that Mr. Mathis had violated New York Penal Law §§ 240.20(6).

37. The executed Summons was then forwarded by Defendant Concepcion to the Bronx County District Attorney's Office.

38. Legal process was issued against Mr. Mathis.

39. During the pendency of the criminal proceeding, Defendants forwarded false evidence to the Bronx County District Attorney's Office, *inter alia*, arrest reports and complaint reports.

40. Mr. Mathis suffered damage as a result of Defendants' actions. Mr. Mathis was deprived of liberty, suffered emotional distress, a concussion, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

## FIRST CAUSE OF ACTION
### *42 U.S.C. § 1983*

41. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

42. Defendants, by their conduct toward Mr. Mathis as alleged herein, violated Mr. Mathis's rights guaranteed by 42 U.S.C. § 1983, the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States.

43. As a direct and proximate result of this unlawful conduct, Mr. Mathis sustained the damages herein alleged.

## SECOND CAUSE OF ACTION
### *Unlawful Stop and Search*

44. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

45. Defendants violated the Fourth and Fourteenth Amendments because they stopped and searched Mr. Mathis without reasonable suspicion.

46. As a direct and proximate result of this unlawful conduct, Mr. Mathis sustained the damages herein alleged.

## THIRD CAUSE OF ACTION
### *False Arrest*

47. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

48. Defendants violated the Fourth and Fourteenth Amendments because they arrested Mr. Mathis without probable cause.

49. As a direct and proximate result of this unlawful conduct, Mr. Mathis sustained the damages herein alleged.

## FOURTH CAUSE OF ACTION
*Excessive Force*

50. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

51. Defendants violated the Fourth and Fourteenth Amendments because they used unreasonable force on Mr. Mathis.

52. As a direct and proximate result of this unlawful conduct, Mr. Mathis sustained the damages herein alleged.

## FIFTH CAUSE OF ACTION
*Denial of Substantive Due Process*

53. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

54. Defendants created false evidence against Mr. Mathis.

55. Defendants forwarded false evidence to prosecutors in the Bronx County District Attorney's Office.

56. In creating false evidence against Mr. Mathis, and in forwarding false evidence to prosecutors, Defendants violated Mr. Mathis's right to substantive due process under the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution of the United States.

57. As a direct and proximate result of this unlawful conduct, Mr. Mathis sustained the damages herein alleged.

## SIXTH CAUSE OF ACTION
### *Malicious Abuse of Process*

58. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

59. Defendants issued and/or caused to be issued legal process to place Mr. Mathis under arrest.

60. Defendants arrested Mr. Mathis in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, to cover up their unlawful stop and search of him/her.

61. Defendants pursued these collateral objectives after issuance of legal process by, *inter alia*, forwarding false evidence to the Bronx County District Attorney's Office and continuing to participate in the prosecution of Mr. Mathis.

62. Defendants acted with intent to do harm to Mr. Mathis without excuse or justification.

63. As a direct and proximate result of this unlawful conduct, Mr. Mathis sustained the damages herein alleged.

## SEVENTH CAUSE OF ACTION
### *Malicious Prosecution*

64. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

65. Defendants initiated the criminal proceedings against Mr. Mathis by issuing and/or causing to be issued legal process against Mr. Mathis.

66. Defendants lacked probable cause to commence the criminal proceedings against Mr. Mathis.

67. Defendants' actions were motivated by actual malice.

68. The criminal proceeding was terminated in Mr. Mathis's favor.

69. As a direct and proximate result of this unlawful conduct, Mr. Mathis sustained the damages herein alleged.

### EIGHTH CAUSE OF ACTION
*Failure to Intervene*

70. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

71. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

72. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

73. As a direct and proximate result of this unlawful conduct, Mr. Mathis sustained the damages herein alleged.

### NINTH CAUSE OF ACTION
*Conspiracy under 42 U.S.C. § 1983*

74. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

75. The Defendants and members of the Bronx County District Attorney's Office jointly participated in the deprivation of Mr. Mathis' constitutional rights as set forth herein.

76. The Defendants conspired in the deprivation of Mr. Mathis's constitutional rights by collectively lying about Mr. Mathis' actions and conduct, and intentionally withholding and/or

destroying exculpatory evidence in order to support the Defendants' fabricated version of the events.

77. As a result of the Defendants' malicious efforts to damage Mr. Mathis, Mr. Mathis' liberty was restricted, and Mr. Mathis was restrained, subjected to handcuffing, and, among other things, falsely arrested, strip searched, and prosecuted.

78. As a direct and proximate result of this unlawful conduct, Mr. Mathis sustained the damages herein alleged.

## TENTH CAUSE OF ACTION
### *Equal Protection Clause under 42 U.S.C. § 1983*

79. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

80. The Defendants' conduct was tantamount to discrimination against Mr. Mathis based on his ethnicity. This disparate treatment caused Mr. Gearles to suffer serious injuries.

81. The NYPD discriminatory program is pervasive and evident throughout many of its practices, including those used to stop and arrest Mr. Mathis.

82. The NYPD has maintained illegal stop and question practices, as part of a systematic discriminatory program aimed towards minorities. The searches occur nearly every day without the requisite level of suspicion, and are so customary as to constitute official municipal policy.

83. One such program is the Clean Halls Buildings program, which initially created to combat illegal activity in apartment buildings. Many buildings are enrolled and remain in the program without regard to whether there is sustained or substantial crime. Thus, residents and

their unsuspecting guests are left subject to the unscrupulous stop, question, search, citation, and arrest practices of local NYPD officers.

84. The impact on Blacks and Latinos as compared to Whites is disparaging and significant. From 2006 to 2010, approximately 94.4% of those stopped and questioned for trespassing were Black and Latino, although they only accounted for 52% of the New York City population. Blacks and Latinos were 6 times more likely to be stopped by police than Whites, Asians, and Native Americans combined.

85. The NYPD has also maintained illegal stop and frisk policies, as part of a systematic discriminatory program aimed towards minorities.

86. The New York State Attorney General's 1999 inquiry into the NYPD's stop and frisk program found that between the 175,000 "UF-250" stop and frisk forms filed by officers indicated consistent and significant racial skewing.

87. According to the report, Blacks comprised 25.6% of the City's population, yet 50.6% of all persons stopped were Black. Hispanics comprised 23.7% of the City's population yet, 33.0% of all stops were of Hispanics. By contrast, Whites made up 43.4% of the City's population, but accounted for only 12.9% of all stops. The disparities were further pronounced in precincts where the majority of the population was White. Where Blacks and Hispanics each represent less than 10% of the population, Blacks and Hispanics accounted for more than 50% of stops during any given period. The New York State Attorney General's finding was that 8 out of 9 searches did not uncover contraband.

88. Under the NYPD's policy, if a person is stopped and questioned without official use of force (or with consent) and gives his or her name, documentation is not required.

Consequently, NYPD officers frequently do not to file the proper UF-250 form to record stop and frisk searches.

89. Many experts believe the numbers available from NYPD offices do not accurately reflect the discrimination of the NYPD's stop and frisk program. In one independent street interview conducted with 100 Black and Hispanic males between the ages of 14 and 35, 81 participants reported having been stopped, patted down and questioned, without being arrested.

90. The NYPD arrests more Blacks, Hispanics, and other minorities as compared to Whites in furtherance of its systematic discriminatory program.

91. The NYPD frequently uses marijuana arrest cases to bolster both its productivity and arrest reports. Marijuana possession is an infraction payable by fine in New York City, yet from 1997 to 2006, 52% Blacks, 31% Hispanics were arrested for possession of marijuana, as compared to 15% of Whites.

92. Despite the overwhelming evidence from U.S. government surveys that have consistently shown young Whites between the ages of 18 and 25 using marijuana at higher rates than either young Hispanics and Blacks, in 2006, the marijuana arrest rate of Blacks was five times that of Whites. The arrest rate of Hispanics in 2006 was nearly three times that of Whites.

93. Arrest records consistently show that where minorities represent a small portion of the population, they also represent the majority of arrestees (with the exception of Staten Island). In Staten Island, Blacks were about 10% of the population, but were 37% of marijuana arrestees. In Manhattan, Blacks were about 17% of the population, but accounted for 43% of marijuana arrestees. In Queens, Blacks were about 20% of the population, but accounted for 57% of marijuana arrestees. In Brooklyn, Blacks were about 36% of the population, but were an

overwhelming 65% of marijuana arrestees. Finally, in the Bronx, Blacks were 36% of the population, but accounted for 48% of marijuana arrestees. The White population and the White percentage of marijuana arrestees in each borough were equally skewed, but in the opposite direction.

94. Trespassing and marijuana arrests are the most effective means available for obtaining fingerprints, photographs, and DNA samples (since 2006) from people never before entered in the criminal justice databases. Where those trespassing and marijuana stops result in the issuance of a fine rather than arrest, the outcome is often still detrimental. Often times, young persons in the housing projects (such as those enrolled in the Clean Halls Buildings program) or other poor neighborhoods do not have the means to pay the fines, and a criminal courts will issue a warrant for their arrest. Many times, the subsequent occasion on which that person is stopped, questioned, frisked, or searched by the NYPD, the outstanding warrant will ultimately serve as a basis for arrest.

95. As a result of the foregoing, Mr. Gearles was deprived of rights under the Equal Protection Clause of the Constitution of the United States, and are thereby entitled to damages.

### ELEVENTH CAUSE OF ACTION
*Monell*

96. Mr. Mathis repeats and realleges each and every allegation as if fully set forth herein.

97. This is not an isolated incident. Defendant The City of New York, through its policies, customs, and practices, directly caused the constitutional violations suffered by Mr. Mathis.

98. Defendant The City of New York, through the NYPD, has had, and still has, hiring practices that it knows will lead to the hiring of police officers lacking the intellectual capacity and moral fortitude to discharge their duties in accordance with the Constitution of the United States and is indifferent to the consequences.

99. Defendant The City of New York, through the NYPD, has a *de facto* quota policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

100. This quota policy requires that police officers, including the individual defendants named herein, make a certain number of arrests and/or write a certain number of summonses and desk appearance tickets within an allocated time period.

101. Officers that meet the required number of arrests, summonses, and desk appearance tickets are classified as active officers.

102. Officers that do not meet the required number of arrests, summonses, and desk appearance tickets are classified as inactive officers.

103. Active officers are given promotion opportunities that are not afforded to inactive officers.

104. Active officers are given overtime opportunities, such as security at parades, etc., that are not afforded to inactive officers.

105. The quota policy does not differentiate between arrests, summonses, and desk appearance that are supported by probable cause and ones that are not.

106. Defendant The City of New York, through the NYPD, does nothing to ensure that officers, in trying to fulfill this quota policy, are making arrests and issuing summonses and desk

appearance tickets lawfully. There are no post-arrest investigations that are performed, and no policies in place that would prevent abuse of this policy, such as is demonstrated in the instant case.

107. Defendant The City of New York, through the NYPD, does nothing to determine the outcome of the charges levied against arrestees in order to proper counsel officers as to the lawfulness of their arrests/issuance of summonses and desk appearance tickets.

108. The failure of Defendant The City of New York to, *inter alia*, take these steps encourages, *inter alia*, unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury, in that the quota policy provides, *inter alia*, career and monetary incentives to officers, including the individual defendants herein.

109. Defendant The City of New York, through the NYPD, has a *de facto* overtime policy that encourages and incentivizes unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury.

110. Defendant The City of New York, through the NYPD, provides officers, including the individual defendants herein, with overtime opportunities when arrest are made, or summonses and desk appearance tickets are issued.

111. Upon making an arrest or issuing summons or desk appearance ticket, an arresting officer submits a request for overtime to his commanding officer.

112. These requests are essentially rubberstamped, with commanding officers performing no investigation into the circumstances of the arrest.

113. Defendant The City of New York, through the NYPD, does not perform any post-arrest investigation and there are no policies in place to prevent abuse of this overtime policy.

114. As a result of this overtime policy, officers, including the individual officers named herein, abuse this overtime policy, making baseless arrests and wrongfully issuing summonses and desk appearance tickets to substantially supplement their income through overtime pay.

115. Defendant The City of New York, at all relevant times, was aware that the individual defendants routinely committed constitutional violations such as those at issue here and has failed to change its policies, practices, and customs to stop this behavior.

116. Defendant The City of New York, at all relevant times, was aware that the individual defendants are unfit officers who have previously committed the acts alleged herein and/or have a propensity for unconstitutional conduct.

117. These policies, practices, and customs were the moving force behind Mr. Mathis's injuries.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Mathis respectfully requests judgment against Defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d)     Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 27, 2013

_____
Gregory P. Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
Attorney for Plaintiff
244 5th Avenue, Suite G247
New York, NY
Phone & Fax: (646) 706-7481
greg@moutonlawnyc.com